CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 14 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:14CR00027-01 |
| | ) | (Civil Action No. 7:16CV81219) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| NANCY ELLEN SNYDER, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Senior United States District Judge |

Nancy Ellen Snyder has moved to vacate, set aside, or correct her federal sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, to which Snyder has responded, making the matter ripe for consideration. For the reasons that follow, the government's motion to dismiss will be granted and Snyder's motion to vacate will be denied.

### Background

On April 3, 2014, a grand jury in the Western District of Virginia returned an indictment against Snyder and eleven codefendants. Count One charged Snyder with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. Count Sixteen charged her with distribution of fifty grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

Snyder entered a plea of guilty to Count One of the indictment on September 15, 2014. Under the terms of the written plea agreement, the parties stipulated that Snyder should be held responsible for at least five but less than fifteen kilograms of methamphetamine. For its part, the government agreed to move to dismiss the remaining count of the indictment in which Snyder was charged. The government also agreed to recommend a three-level reduction for acceptance of responsibility under § 3E1.1 of the United States Sentencing Guidelines, if Snyder, in fact,

accepted responsibility for her actions and complied with her obligations under the plea agreement. In exchange, Snyder agreed to waive her right to appeal her sentence "on any ground" except "as to any issue which cannot be waived, by law." Plea Agreement 7, Docket No. 251. Snyder also agreed to "waive any right [she] may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel." Id. at 7-8. Additionally, Snyder acknowledged that the government was retaining all of its rights to seek a reduction of sentence on the basis of substantial assistance, that the government was under no obligation to make such motion, and that "[n]o promises [had] been made" in that regard. Id. at 4.

Snyder initialed every page of the plea agreement, including the page containing the waiver of collateral-attack rights. By signing the plea agreement, Snyder affirmed that she had carefully reviewed every section of the agreement with her attorney, that she understood the agreement, and that she was voluntarily agreeing to its terms. Id. at 12. Snyder further acknowledged that she had "not been coerced, threatened, or promised anything other than the terms" of the plea agreement, in exchange for her plea of guilty. Id.

During the guilty plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Snyder possessed the capacity to make a voluntary, intelligent, and informed decision. Plea H'rg Tr. 5-7, Docket No. 439. The court also established that Snyder understood the conspiracy charge to which she was pleading guilty, as well as the purpose of the hearing. Id.

The court instructed the Assistant United States Attorney to review the elements of the conspiracy charge, the applicable statutory penalties, and the most important provisions of the

2

plea agreement that Snyder had reached with the government. The prosecutor subsequently outlined several sections of the plea agreement, including section B(2), in which Snyder stipulated that her conduct involved at least five but less than fifteen kilograms of methamphetamine. Id. at 10. The prosecutor also summarized Sections C(1) and (2) of the plea agreement. She explained that, pursuant to those sections, Snyder had "agreed to waive her right to appeal any and all issues that can be waived" and her "right to collaterally attack the judgment in her case." Id. at 11. Upon being asked if the prosecutor's summary of the plea agreement was consistent with her own understanding of the agreement, Snyder responded in the affirmative. Id. at 12.

The court then inquired as to whether Snyder was voluntarily pleading guilty. In response to the court's questions, Snyder affirmed that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement, that no one had promised her a particular outcome or sentence, and that no one had told her that she "would be treated in some special, favorable way." Id. at 12-13. Snyder further affirmed that no one had attempted to coerce or compel her to plead guilty, and that she was pleading guilty because she was, in fact, guilty of the conspiracy offense charged in Count One of the indictment. Id. at 13. Snyder also indicated that she understood that the parties had agreed that she should be held accountable for between five and fifteen kilograms of methamphetamine. Id. at 17, 37. Snyder further affirmed that she understood the waiver provisions in the plea agreement. Id. at 13-14.

The court subsequently reviewed additional rights that Snyder would waive by pleading guilty rather than proceeding to trial. Notwithstanding all of the valuable rights that she would

3

waive by pleading guilty, and the penalties that could be imposed upon conviction, Snyder indicated that she was "absolutely sure" that she still wished to plead guilty. Id. at 31. The court then asked Snyder to explain what she had done that made her believe that she was guilty of the offense charged in Count One of the indictment. In response, Snyder advised the court that she was involved in a "conspiracy to sell drugs," and that she sold and "front[ed]" methamphetamine to other individuals for resale. Id. at 32-33.

The court then called upon the Assistant United States Attorney to offer evidence in support of the proposed plea of guilty. Proceeding by proffer, the prosecutor summarized the government's evidence as follows:

> Beginning around 2010 and continuing until at least March of 2014, an organized group of individuals engaged in a conspiracy to distribute large amounts of methamphetamine in the Western District of Virginia and elsewhere.
>
> . . . .
>
> Ms. Snyder, the defendant here today, was part of this group of individuals who was distributing methamphetamine during this time period.
>
> Ms. Snyder is charged with conspiracy to distribute methamphetamine, and during her time period within it, she was involved with several people, both in this indictment, uncharged people, and also in the other indictment containing the Perez brothers. She was involved with Silvano Perez Coronado and Cristian Perez. She was also involved with James Vivian Bedwell, Jason Mooney, Kent McPeak, Johnny Shipwash, Robbie Cantrell, Robert Durrell and others.
>
> The evidence would show that Ms. Snyder was being fronted ounces and half pounds, up to pounds of methamphetamine, by Silvano Perez Coronado during a time period and that his brother Cristian Perez was the one who took over that portion of the agreement.
>
> This methamphetamine was coming via cars here from California and prior to that, it was coming from Tijuana, Mexico and other places located in Mexico.
>
> . . . .

> Now, going back to Ms. Snyder specifically, she would be expected to pay Mr. Silvano Perez [Coronado] and Mr. Cristian Perez . . . back a certain amount of money based on the methamphetamine that she was being fronted during this time period. Should would then have individuals she would front methamphetamine out to, to make money back, both for her own use of methamphetamine and also for the money she was receiving. These individuals included James Bedwell, Jason Mooney, Johnny Shipwash, Kent McPeak, Rob Durrell, Ronnie Cantrell, among others.
>
> During this period of time, as I've stated, it happened from at least 2010 until 2013. But then also in 2014, we have a controlled buy that we would have put forth against Ms. Snyder during that period of time that happened on March 13, 2014.
>
> Essentially, controls were put in place and a confidential informant made a purchase of approximately two ounces of methamphetamine from Ms. Snyder, from her residence down in Carroll County, Virginia. It field-tested positive for methamphetamine and the substance weighed approximately 54.8 grams. It has been sent to the DEA lab for analysis. We have yet to receive the results at this point in time.
>
> . . . .
>
> Now overall, during the course of this conspiracy, given her role and foreseeability, the United States submits it would prove Ms. Snyder should be held accountable for between 5 kilograms and 15 kilograms of methamphetamine, as we've agreed upon in the plea agreement.
>
> Your honor, these events occurred both in the Western District of Virginia and elsewhere.

Id. at 33-36. When asked if the foregoing summary of the evidence was consistent with Snyder's understanding as to what the government would have been able to prove if the case had gone to trial, Snyder responded in the affirmative. Id. at 37. More specifically, Snyder agreed that the evidence would establish that she was responsible for between five and fifteen kilograms of methamphetamine, and that she was "one of the top people in this conspiracy." Id. at 37-38.

At the conclusion of the hearing, the court inquired as to whether Snyder was satisfied with the services that her attorney had rendered on her behalf. Snyder indicated that she was

5

satisfied "with all elements" of her attorney's services, that there was nothing that the court needed to know about the attorney's representation, and that she did not have any questions for her attorney or the court. Id. at 39-40. Accordingly, the court determined that Snyder was capable of making an informed plea, that she understood the nature and consequences of her plea, and that her plea of guilty was a knowing and voluntary plea supported by an independent basis in fact as to each of the essential elements of the conspiracy offense. Id. at 42. The court accepted Snyder's plea of guilty and took her plea agreement under advisement.

In preparation for sentencing, a probation officer prepared a presentence investigation report ("PSR") that summarized the offense conduct. According to the PSR, Snyder was the most culpable member of the charged conspiracy. She served as a source of supply for co-conspirators, and as a leader and organizer of the conspiracy. The investigation revealed that Snyder's residence was used as the primary location for her methamphetamine transactions. Additionally, Snyder was found to be in possession of methamphetamine and two firearms during a 2011 traffic stop, and admitted having knowledge that one of her suppliers possessed a firearm.

Consistent with the stipulation in the plea agreement and the government's proffer, the probation officer determined that Snyder should be held responsible for at least five but less than fifteen kilograms of methamphetamine, which resulted in a base offense level of 34 under the Sentencing Guidelines in effect at the time of sentencing. The probation officer applied a two-level enhancement for possession of a firearm, a two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance, a four-level leadership enhancement, and a three-level reduction for acceptance of responsibility, resulting in a total

offense level of 39. When combined with a criminal history category of I, this total offense level produced a recommended Guidelines range of imprisonment of 262 to 327 months.

Snyder's counsel submitted a written objection to the PSR. In particular, counsel objected to the application of the premises enhancement. Counsel argued that the defendant's residence belonged to her mother, and that the defendant had lived at the residence since 1990.

Prior to the sentencing hearing, the government filed a substantial assistance motion pursuant to § 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e). The government noted that Snyder had provided substantial assistance in the investigation and prosecution of other individuals who had committed criminal offenses.

Snyder appeared for sentencing on December 15, 2015. After hearing argument from counsel, the court overruled the objection to the presentence report, adopted the report in its entirety, and approved the plea agreement. The court also granted the substantial assistance motion filed by the government. After receiving testimony from the defendant and other witnesses, and upon considering the factors set forth in 18 U.S.C. § 3553(a), the court imposed a total term of imprisonment of 148 months, representing a downward departure of more than forty percent below the recommended Guidelines range. The judgment was entered on December 17, 2015. Snyder did not appeal her conviction or sentence.

On December 22, 2016, Snyder moved to vacate her sentence under 28 U.S.C. § 2255. The original motion, which was filed pro se, sets forth two claims: (1) that Snyder "was promised a sentence reduction based on her extensive cooperation" by Kevin Moore, a former task force officer involved in the investigation, who "acted inappropriately" and was "found

guilty of crimes [him]self";[1] and (2) that Snyder should have received a substantial assistance motion prior to sentencing. Def.'s § 2255 Motion 5-7, Docket No. 430; see also Def.'s Br. in Supp. of § 2255 Motion 2, Docket No. 432.

The government subsequently moved to dismiss Snyder's § 2255 motion, arguing that her claims are barred by the waiver of collateral-attack rights contained in the plea agreement, and that the defendant, in fact, received the benefit of a substantial assistance motion at the time of sentencing. Following the filing of the government's motion, Snyder filed a response in opposition. In her response, Snyder says little about her original claims. Instead, she asserts new claims of ineffective assistance of counsel related to the sentencing phase of her case. Snyder's motion and the government's motion to dismiss are ripe for disposition.

## Discussion

Section 2255 sets forth four grounds on which a prisoner in federal custody may collaterally attack her sentence: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

---

[1] In December of 2014, a full year before Snyder was sentenced, Moore entered a plea of guilty to one count of bribery, in violation of 18 U.S.C. § 201(b)(2)(A). Moore admitted to exchanging promises of official action for sexual favors from three cooperating witnesses during his service as a task force officer for the Drug Enforcement Administration.

I.  **Original claims**

The government moved to dismiss Snyder's § 2255 motion on the basis that Snyder's claims are barred by the waiver of collateral-attack rights contained in the plea agreement. As previously stated, Snyder agreed to waive "any right [she] may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel." Plea Agreement 7-8. For the following reasons, the court agrees with the government that the waiver is valid and enforceable, and that the original claims asserted in her § 2255 motion are barred by the waiver.

When the government seeks to enforce a waiver of collateral-attack rights, and the defendant does not contend that the government breached the plea agreement, the waiver will be enforced if the record establishes that the waiver is valid and that the challenged issues fall within the scope of the waiver. United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005). The United States Court of Appeals for the Fourth Circuit has held that a waiver of collateral-attack rights is valid as long as the waiver is knowingly and voluntarily made. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). The determination of whether a waiver is knowing and voluntary depends "upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused" during the plea colloquy. United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992) (citation and internal quotation marks omitted). The Fourth Circuit has emphasized that "a defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity'" and "present 'a formidable barrier in any subsequent collateral proceedings.'" United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Accordingly,

"in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false,'" and "the truth of sworn statements made during [the] Rule 11 hearing is conclusively established." Lemaster, 403 F.3d at 221-22 (quoting Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). If a district court determines that a petitioner knowingly and voluntarily waived her collateral-attack rights, and that the petitioner's claims fall within the scope of the waiver, the court must dismiss the claims without holding an evidentiary hearing or addressing their merits. See id. at 222.

Having reviewed the record in this case, the court concludes that Snyder's guilty plea and her waiver of collateral-attack rights were knowing and voluntary. Snyder initialed every page of the plea agreement, including the page containing the waiver of collateral-attack rights. By signing the plea agreement, Snyder affirmed that she had carefully reviewed every section of the agreement with her attorney, that she understood the agreement, and that she was voluntarily agreeing to its terms. Likewise, during the plea hearing, Snyder acknowledged that she understood the plea agreement, and that she knew that she had "agreed to give up [her] right to collaterally attack the court's judgment, save for a challenge based on a claim of ineffective assistance of counsel." Plea H'rg Tr. at 14. Snyder also confirmed that she was satisfied with the services provided by her attorney, that no one had forced her to enter into the plea agreement or to plead guilty, and that no one had made any promises other than those included as terms of the plea agreement.

Snyder's testimony at the plea hearing conclusively establishes that she understood the terms of the plea agreement, including the waiver of collateral-attack rights, and that her plea of

guilty was made knowingly and voluntarily. To the extent that Snyder's motion could be read to suggest that she agreed to plead guilty because she was promised a sentence reduction by Kevin Moore, such claim is directly contradicted by the sworn statements that she made during the plea hearing. See id. at 12 (confirming that no one had promised her any particular outcome or sentence, or told her that she would be treated in some special, favorable manner). It is also unsupported by the defendant's sworn testimony during the sentencing hearing, which included no mention of any promises by Moore or any desire to withdraw her guilty plea.[2] Indeed, Snyder clarifies in her response to the government's motion to dismiss that she is "not seeking to withdraw her plea" of guilty, and instead wishes to receive a lesser sentence. Response to Mot. to Dismiss 6, Docket No. 447. On this record, and in the absence of any extraordinary circumstances, the court concludes that the truth of Snyder's sworn statements during the Rule 11 hearing is "conclusively established," Lemaster, 403 F.3d at 222, and that the waiver of collateral-attack rights is valid and enforceable.

The court further concludes that the original claims asserted in her § 2255 motion fall within the scope of the waiver. While the Fourth Circuit has recognized a narrow class of claims that fall outside the scope of a valid waiver, neither of her original claims falls within that class.[3]

---

[2] When asked if there was anything she wanted to share with the court before being sentenced, the defendant testified as follows: "I'm sorry. I messed up and I'm sorry, and I'm paying for it every day. I destroyed a lot of lives, including my own, and I want to say I'm sorry." Sentencing Tr. 28, Docket No. 440.

[3] Issues that a defendant could not have reasonably foreseen when entering into a plea agreement, such as the imposition of a sentence above the statutory maximum, the imposition of a sentence based on an unconstitutionally impermissible factor such as race, United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992), or the complete denial of counsel at any stage of the proceedings following the entry of the plea, United States v. Attar, 38 F.3d 727, 732-733 (4th Cir. 1994), fall outside the scope of the waiver.

11

Consequently, the claims asserted in Snyder's § 2255 motion are barred by the waiver and must be dismissed.[4]

## II. New claims of ineffective assistance

In her response to the government's motion to dismiss, Snyder asserts entirely new claims for relief. Perhaps realizing the scope and effect of the waiver of collateral-attack rights, Snyder argues that she "filed her motion for relief based on ineffective assistance of counsel." Pl.'s Response 3, Docket No. 447. Her claims of ineffective assistance appear to relate primarily to the sentencing phase of the case. In particular, Snyder claims that her attorney was ineffective in failing to (1) appear for a presentence report interview; (2) challenge the quantity of methamphetamine attributed to her in the presentence report; (3) object to the application of a firearm enhancement; and (4) notify her when counsel received additional discovery materials from the government regarding the criminal investigation against Moore. Snyder emphasizes that "she is not seeking to withdraw her plea." Id. at 6. Instead, Snyder believes that she should have received a lesser term of imprisonment. Id.

As an initial matter, the court notes that a response brief is not the appropriate vehicle in which to raise new claims, and that the court could decline to consider Snyder's new claims for that reason. See Esposito v. United States, No. 3:08CV29-V, 2009 U.S. Dist. LEXIS 36575, at *20 n.6 (W.D.N.C. Apr. 2, 2009) (explaining that a petitioner's claims are "limited to those raised in his Motion to Vacate and those in any timely filed motion to amend"); see also Gripper v. United States, No. 1:06CV85-T, 2008 U.S. Dist. LEXIS 55964, at *23 (W.D.N.C. July 2, 2008) (declining to consider new claims raised for the first time in a reply brief). Nonetheless,

---

[4] The court nonetheless notes that, contrary to the allegations in her original motion, Snyder did, in fact, receive a substantial assistance motion, which resulted in a significant departure from the recommended Guidelines range.

12

even assuming that the claims of ineffective assistance were properly raised, the court concludes that the claims lack merit.

Claims of ineffective assistance are reviewed under the standard enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a defendant must satisfy "two necessary components." Jones v. Clarke, 783 F.3d 987, 991 (4th Cir. 2015). First, the defendant "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, the defendant "must show that the deficient performance prejudiced the defense." Id. This requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Snyder's claims of ineffective assistance do not satisfy Strickland's stringent requirements. Even assuming that her attorney did not appear for a presentence report interview or notify her of additional discovery materials provided by the government, Snyder provides no indication as to how counsel's performance in these regards affected her sentence or otherwise altered the outcome of her case in any way. Snyder's conclusory allegations regarding counsel's performance are insufficient to establish the requisite prejudice under Strickland. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (observing that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court") (citation omitted).

13

The same is true to the extent Snyder faults counsel for failing to object to the drug quantity attributed to her in the presentence report. Snyder baldly asserts that the drug quantity was inaccurate but does not provide any details or facts to support such claim. Moreover, as part of her plea agreement with the government, Snyder agreed that she was responsible for at least five but less than fifteen kilograms of methamphetamine. Likewise, during the Rule 11 hearing, Snyder acknowledged that the government would have been able to prove that she should be held accountable for between five and fifteen kilograms of methamphetamine. In light of the stipulation in the plea agreement and her sworn statements during the Rule 11 hearing, Snyder is unable to establish that counsel was ineffective in failing to object to the drug weight. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) (noting that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance claim because the result of the proceeding would not have been different had the attorney raised the issue").

Snyder is also unable to establish that counsel was ineffective in failing to object to the firearm enhancement. It is undisputed that Snyder was found to be in possession of a firearm and methamphetamine during a traffic stop that occurred within the charged time frame of the conspiracy, and that she admitted having knowledge that one of her primary suppliers possessed a firearm. The Sentencing Guidelines direct the court to increase a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The United States Court of Appeals for the Fourth Circuit "has held that weapons carried by a member of a conspiracy are attributable to a co-conspirator when 'under the circumstances of the case, it was fair to say that it was reasonably foreseeable to [the defendant]

14

that [her] co-participant was in possession of a firearm.'" United States v. Gomez-Jimenez, 750 F.3d 370, 381 (4th Cir. 2014) (quoting United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994)). Based on the evidence summarized above, the court remains convinced that the two-level enhancement under § 2D1.1(b)(1) was appropriate in her case. Accordingly, Snyder is unable to show that counsel's performance was deficient or prejudicial under Strickland.

## Conclusion

For the reasons stated, the court will grant the government's motion to dismiss and deny Snyder's § 2255 motion. Additionally, because Snyder has failed to make a substantial showing of the denial of a constitutional right, the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

DATED: This 14th day of December, 2017.

_____
Senior United States District Judge